Good morning all. Our first case for argument this morning is United States v. Rainone. Ms. Lopez. May it please the court. There are three issues presented by this case. First, whether Mr. Rainone's Fifth and Sixth Amendment rights were violated when the district court gave an outdated joint possession instruction when all the government's evidence pointed to Mr. Rainone solely possessing the gun. Two, whether Mr. Rainone's Fourth Amendment rights were violated when the Addison Police Department, acting pursuant to a state investigation, placed a GPS tracker on his vehicle without a warrant and without his consent. And three, whether Mr. Rainone's Fifth and Sixth Amendment rights were violated when the district court permitted a man named Brian Thalen to testify that his gun was stolen. I'd like to start with issue two. In January 2009, the Addison Police Department, acting pursuant to a state investigation, attached a GPS tracking device to Mr. Rainone's vehicle without a warrant and without his consent. We know that the time period in which this warrant was attached was at least 12 days. So Mr. Rainone drove around with this GPS tracker on his vehicle for at least 12 days without knowing that it was there. As a result of this GPS tracker, the Addison Police relied on some of the information that they learned from surveilling him via GPS to get a warrant to search his vehicle and to later search his house. The evidence that was obtained against him resulted from this GPS being a warrantless device. This violated his rights to be free from unreasonable search and seizures. And furthermore, at the time that the Addison Police attached the device, they were acting pursuant to state law and not federal law. So therefore, this court's decision in Garcia, which would have been binding precedent at the time had they been acting pursuant to a federal investigation, did not apply. Furthermore, this case is distinguishable from the facts in Garcia because in Garcia, the time that the GPS tracker... We don't know the exact amount of time that the GPS tracker was on the vehicle for, but based on articles, it can be safe to say that it was a short amount of time. And this further is emphasized in the Cuevas v. Perez case, where the tracker was on the vehicle for 60 hours. This was also a... The 7th Circuit held that the duration of the time that the GPS vehicle was attached was not a search within the meaning of the Fourth Amendment. Whereas in Jones, which later overturned the Garcia and Cuevas case, the Jones case held that the 28 days of GPS tracking certainly was unreasonable and was a search within the meaning of the Fourth Amendment. And in this case, Mr. Rainoni not only had this device on his vehicle for 12 days, but this was... We know that it was at least 12 days. And under Illinois law, the Illinois Constitution is free to give its citizens greater protection than the federal Constitution does. And an example of this can be found in the case of People v. Kruger, where the Illinois Supreme Court held that the good-faith exception to the knock-and-announce rule violated the Illinois citizens' rights to be free from unreasonable search and seizures. This was in contrast to the Supreme Court case of People v. Krull, where the Supreme Court held that the officers' good-faith reliance on a law that later becomes constitutional is binding at the time, and the exclusionary rule should not apply. But the exclusionary rule should apply in this case because the Addison police officers were acting pursuant to a state investigation rather than a federal investigation. What if it had been a joint investigation? It was not a joint investigation. What if it had been? If it had been a joint investigation, then the facts of the case may be more like the Brown case, where the warrant, where the officers, where the good-faith rule could have applied because Garcia was controlling at the time. But because it was not, and if it was a joint investigation, you would have to analyze it in two separate ways. You'd have to think that they would be acting under federal law as opposed to the state law. But in this case, they were only acting pursuant to a state investigation. This did not become a federal case until the information that was used in the warrant resulted in a gun being found where Mr. Rainoni was staying at the time. Well, you would acknowledge that our case law has said that in a federal prosecution, it's the federal standard that would apply. You said that in, I think it was, Quintanilla? That's absolutely correct, Your Honor. The federal standard would apply if this were a federal investigation, but... Well, it's a federal prosecution. Federal prosecution, yes, Your Honor. So the trial occurred in the building. That's absolutely correct, but the reason why this case got to the federal building was a result of a state investigation involving the Addison police. Again, this was not a federal investigation. At the time, the officers were acting pursuant to Illinois law. They were Addison police officers, and they were under Illinois jurisdiction. There was no side federal investigation going on along with this state investigation, at least that we know of, of course. And therefore, the Addison police should have been acting under Illinois law and our Illinois Constitution, which gives its citizens greater protection, at least in the example of the knock-and-announce situation, than does the federal Constitution. And therefore... You don't have any case law that would suggest that that tracking of initial information from a state authority would make a difference. I understand the distinction you're making, but have we got any cases that would indicate that? There is no case law as far as I was able to find and as far as I know that exists other than the Kruger case, which I can say is our best authority here in the sense that it gives its citizens the greater protection. But no, Illinois does not have a case where it says one way or the other. No, I mean, is there a federal case that would say a situation such as we have here, where you have this initial state investigation, which results in a federal prosecution, where that would preclude the normal application of federal law to the prosecution? The only case that we have that states sort of in the realm of what you're asking, Your Honor, is the Taylor case, because the Taylor case started in Indiana. Yeah. But again, that was a little bit different. That was a lot different than we had here because they submitted, the officers, the state officers in Taylor submitted to the judge that their GPS findings, that they were going to use this GPS tracker. And again, and not only that, but Indiana law codifies, Indiana law and federal law are hand-in-hand when it comes to following the good faith exception to the exclusionary rule, whereas Illinois is not in the same ballpark and is in a different field than the federal law is. And because this court rejected the application of the knock-and-announce rule, I'm sorry, because the Illinois court rejected the application of the knock-and-announce rule in Kruger, it would likely reject the extension of the good faith rule in Davis. And therefore, we ask that the GPS be stricken, and or we were entitled to have the notes that the officers relied on when it came to how much of their GPS surveillance was used in getting the warrant. Because we don't know how much of the GPS tracking they used in order to put in their warrant, or their application for a search warrant to the judge, because the search warrant was silent as to how much they relied on this GPS information. And we asked for this information and we didn't get it. And therefore, we don't know if without the information from the GPS tracker, if there would have been even probable cause to get a warrant. And turning to the third issue, Mr. Rainone's Fifth and Sixth Amendment rights were violated when it permitted Mr. Brian Thelen to testify that his gun was stolen. At the trial, Mr. Thelen testified that he was the owner of the gun and he bought the gun in 1971, and the gun was stolen from his home in 2008. This left the jury with a glaring inference that Mr. Rainone was the one who broke into Mr. Thelen's home to steal the gun. It's understandable they might have speculated that, but if I understand this record correctly, Ms. Lopez, the defense was highlighting both the access that other people had to the bedroom and the nightstand in question where the gun was found, and was highlighting the government's lack of knowledge about when the gun was placed there. So the testimony about the timing of the theft of the gun seems to at least put an outer limit on that question, right? So why isn't that a reasonable basis for admitting that evidence? Well, Your Honor, while the prosecution is certainly entitled to present its evidence the way it wants, there are other ways that they could have presented that testimony. They could have had other people that had access to the home come in and testify that it wasn't their gun, as opposed to putting Mr. Thelen on the stand to testify that he was this victim of this horrible home invasion and or robbery, and his gun was stolen in 2008, leaving the jury with the inference, with the obvious inference, that the gun was stolen from Mr. Thelen and invoking sympathy for the jury. So this is a 403 argument? In that regard, it's a 403 argument to a certain extent, yes. It certainly was prejudicial to, certainly its probative value did not outweigh the prejudicial effect that it had on Mr. Rainoni because there were other options that the prosecution could have chosen to bring in evidence that this gun did not, may have belonged, or did not belong to anybody else but Mr. Rainoni, as they stated. Ms. Lopez, could I just ask you, it looked like this took a long time to get to trial for a pretty simple felon in possession case. It did, Your Honor, and that's because of a health scare with my partner. So I think that it was a health scare and that was the end result, and that it also took a while to get to trial because Mr. Rainoni switched attorneys. And then finally, in regard to the first issue, the district court erred when it gave the jury instruction on joint possession because the government's evidence did not show that more than one person possessed the gun. I'd like to reserve my remaining time for rebuttal if that's okay with the court. Of course. Thank you. Thank you, Ms. Lopez. Ms. Bowman, I'll meet you. May it please the Court, Counsel, good morning. Beginning with the first issue argued by my opponent, that is the suppression issue, the district court did not err in determining that the exclusionary rule should not be applied to suppress evidence derived from a warrantless GPS locator device before the Supreme Court's decision in Jones. As the district court found correctly and consistently with this Court's case law, binding circuit precedent would have led reasonable officers to believe that using a GPS tracker without a warrant to track a car's location was not a search. The defendant relies on state law rather than federal law, but as Judge Flom pointed out, longstanding rule, that federal law applies in the context of the determination of admissibility of evidence in a federal prosecution, and that is true here. And indeed, specifically with respect to this issue, the Seventh Circuit has held that officers and agents are permitted to rely on the circuit law of the state in which they, or that applies to the state in which they are practicing. There are no cases that I'm aware of that I could find that in any way address the possibility that there might be circumstances under which the court would look to state law in determining the question of whether the exclusionary rule should apply or should bow to the good faith exception in this type of context. And as I said, indeed, the cases say otherwise. Moreover, the state law relied upon by the defendant here is not even the relevant law in that the defendant relies on state law regarding the application of the good faith exception. But if state law were to apply here, which it shouldn't, but if it were, we would look to the law that governed the police officer's conduct, not the law that determined whether there existed or did not exist a remedy. And that's the only state law that the defendant has been able to produce. And indeed, there was no state law forbidding warrantless use of GPS tracking devices at the time of the officer's actions. So there's no question here that the district court acted correctly in determining that the exclusionary rule should not apply to suppress the evidence involved here. With respect to the question of the testimony showing that the gun that the defendant was charged with had been stolen, the district court did not abuse its discretion in admitting that evidence for a number of reasons. The evidence showed that although the defendant was not the rightful owner of the gun, neither were any of the other people who had access to the defendant's residence. The theory of defense, as Your Honor, Judge Hamilton has noted, focused largely, if not exclusively, on the idea that multiple persons other than the defendant could have left the gun where it was recovered. The defendant harped on over and over again in cross-examination and in argument that any one of the people who had access and even keys to the apartment could have left the gun where the officers found it. In particular, the defendant focused on the defendant's roommate's ex-boyfriend, and he moved out of the apartment in September 2008, the evidence showed. The challenged evidence showed that the gun could not have been placed in the defendant's bedroom until October 2008 when the gun was stolen, and that was after the ex-boyfriend had left the apartment. Testimony of Mr. Thalen also tended to refute the defendant's suggestion that the absence of defendant's fingerprints was telling. Mr. Thalen testified that he used the gun, that he took it out of state for shooting trips to Wisconsin, and his fingerprints were also not found on the gun. The evidence, therefore, was, as the district court found, very, very relevant to the issues that had been joined in the case, and there was no abuse of discretion in admitting it. And in any event, even if the admission of that evidence were erroneous, it would be a harmless error here because there was an avalanche of evidence demonstrating the connection between the defendant and the gun here. The gun was found in the nightstand next to the bed in the bedroom that was used by the defendant. On the nightstand were pictures of the defendant's family members, his son and his grandson. Inside the nightstand with the gun were documents that bore the defendant's name and the address where the gun was recovered. There was just an avalanche of evidence demonstrating that the defendant did, in fact, constructively possess the gun here. Finally, with respect to the joint possession instruction, the district court properly instructed the jury regarding constructive and joint possession using language nearly identical to language that was expressly approved by this court in Lawrence. Evidence showing that the defendant shared the apartment with another person, that others had access and even keys to the apartment, and defendants' efforts to exploit that evidence in support of the argument that any one of those individuals who had access to the apartment may have left the gun there amply supported the district court's decision to give the instruction. Therefore, if there are no further questions, the government would ask that the defendant's conviction be affirmed. Thank you, Ms. Lopez. In regard to the second issue, just because there isn't a law in Illinois that forbids warrantless GPS tracking does not mean that it's okay for officers to just go ahead and put GPS tracking devices on cars without a warrant and without consent. And the evidence that was obtained from the use of the GPS device in violation of Mr. Rainone's Fourth Amendment rights should be suppressed. And for those reasons, we ask that this court vacate Mr. Rainone's conviction and grant him a new trial. Thank you. Thank you, Ms. Lopez. Thanks to all counsel. Ms. Lopez, you have the additional thanks of the court for accepting the appointment in this case. Case is taken under advisement.